IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER C. COUNTS,** | ) | |
| Plaintiff | ) | Civil Action No. 2:21cv00013 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Christopher C. Counts, ("Counts"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

-1-

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Counts protectively filed applications for DIB and SSI on February 7, 2019, alleging disability as of November 1, 2018, due to type 1 diabetes mellitus, diabetic neuropathy, hypothyroidism, anxiety, depression and fatigue. (Record, ("R."), at 12, 199-202, 205-06, 229, 266, 285.) The claims were denied initially and on reconsideration. (R. at 114-16, 121-23, 127-42.) Counts requested a hearing before an administrative law judge, ("ALJ"). (R. at 143-44.) A hearing was held on September 11, 2020, at which Counts was represented by counsel. (R. at 28-55.)

By decision dated September 30, 2020, the ALJ denied Counts's claims. (R. at 12-21.) The ALJ found Counts meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2024. (R. at 14.) The ALJ found Counts had not engaged in substantial gainful activity since November 1, 2018, the alleged onset date.[2] (R. at 14.) The ALJ determined Counts had severe impairments, namely type 1 diabetes, peripheral neuropathy and

---

[2] The ALJ noted that Counts worked after the alleged disability onset date, but this work did not rise to the level of substantial gainful activity. (R. at 14.) Counts testified at his hearing that he stopped working the beginning of July 2020 and he was only working 20 hours a week before he stopped working. (R. at 14-15, 32.)

hypothyroidism,[3] but he found Counts did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

The ALJ found Counts had the residual functional capacity to perform light[4] work, except he was limited to no more than occasional climbing, stooping, kneeling, crouching and crawling and no more than occasional exposure to hazards, such as hazardous machinery or unprotected heights. (R. at 16.) The ALJ found Counts was able to perform his past relevant work as a fast-food worker and manager for fast food services. (R. at 20.) In addition, based on Counts's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Counts could perform, including the jobs of a furniture rental consultant, a children's attendant and an addressing clerk. (R. at 20-21, 53-54.) Thus, the ALJ concluded Counts was not under a disability as defined by the Act, and he was not eligible for SSI and DIB benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(f)-(g), 416.920(f)-(g) (2021).

After the ALJ issued his decision, Counts pursued his administrative appeals, (R. at 193-94, 315-16), but the Appeals Council denied his request for review. (R. at 1-5.) Counts then filed this action seeking review of the ALJ's

---

[3] Although Counts alleged disability due to depression and anxiety, the ALJ found he did not suffer from a severe mental impairment. (R. at 15.) The record shows Counts was cooperative; he was not depressed or anxious; he had intact memory; and he had good insight and cognitive functioning. (R. at 15, 319, 343, 482.) In fact, Counts regularly denied symptoms of depression and there is no indication he received psychological or psychiatric treatment. (R. at 354, 361, 363, 375, 400, 420, 432.)

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2021).

unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2021). This case is before this court on Counts's motion for summary judgment filed September 21, 2021, and the Commissioner's motion for summary judgment filed October 20, 2021.

## *II. Facts*

Counts was born in 1993, (R. at 199, 205), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education and vocational training in auto mechanics and culinary arts. (R. at 35, 230.) Counts has past work experience as a fast-food worker and a manager. (R. at 36, 53, 251.) Counts stated he suffered from diabetes since he was five years old, and, since qualifying for Medicaid, he was using an insulin pump. (R. at 37, 40.)

In rendering his decision, the ALJ reviewed records from Dr. Gene Godwin, M.D., a state agency physician; Dr. Wyatt S. Beazley, III, M.D., a state agency physician; Dr. Kevin Blackwell, D.O.; Dr. Wendy Abbott, D.O.; Dr. Brett Compton, O.D.; The Health Wagon; Mountain View Regional Medical Center, ("Mountain View"); Norton Community Hospital; Johnston Memorial Hospital; and Dr. Matthew Beasey, M.D., an endocrinologist.

On February 21, 2012, Dr. Kevin Blackwell, D.O., examined Counts at the request of Disability Determination Services. (R. at 317-21.) Counts complained of diabetes since age five with typical sugar levels ranging in the 400s but no other systemic symptoms, such as retinal or kidney complications. (R. at 318). Counts stated that he experienced arm weakness and fatigue but no abnormal thirst,

-4-

urination or coronary artery problems. (R. at 318.) On physical examination, Counts had normal vision without correction; he was fully oriented with good mental status functioning; his affect, thought content and general fund of knowledge were intact; his extremities had no cyanosis or edema; his gait was symmetrical and balanced; his shoulder and iliac crest heights were good and equal, bilaterally; his upper and lower joints had no effusions or obvious deformities; his upper and lower extremities were normal for size, shape, symmetry and strength; he had good grip strength; his fine motor movements and skill activities of the hands were normal; his reflexes in the upper and lower extremities were good and equal, bilaterally; his proprioception was intact; and he had normal range of motion in the upper and lower extremities. (R. at 317, 319-20.) Dr. Blackwell diagnosed insulin-dependent diabetes and thyroid problems. (R. at 320.)

Dr. Blackwell opined Counts had the ability to lift 45 pounds occasionally and 25 pounds frequently; sit for four-to-six hours and stand for two-to-four hours, assuming normal positional changes, in an eight-hour workday; he could perform bilateral over-head reaching and bilateral pedal operation one-third of the day; he could squat one-third of the day and kneel two-thirds of the day; and he should avoid crouching, crawling, and unprotected heights, as well as repetitive and continuous stair-climbing. (R. at 321.) Counts had no limitations in fine motor movements and could perform "skill activities" with his hands. (R. at 321.)

On August 15, 2012, Counts presented to the emergency department at Norton Community Hospital for complaints of fever, vomiting, diarrhea and dysuria after running out of insulin. (R. at 439-40.) His examination was normal,

and he was given medication for his insulin pump. (R. at 440-41.) Counts was diagnosed with diabetes. (R. at 440.)

From October 2014 through September 2017, Counts sparingly presented to The Health Wagon for medication refills after experiencing episodes of diabetic ketoacidosis, ("DKA"), in 2013 and 2015, respectively, due to noncompliance. (R. at 354-73, 416-18, 428-30.) During this time, examinations revealed Counts was in no acute distress; he was well nourished; his pupils were equal in size, round, reactive to light with normal accommodation; his neck was supple, with full range of motion and no cervical lymphadenopathy; he had clear bilateral breath sounds; his motor strength was normal in both the upper and lower extremities; he had intact sensation; and his foot examinations were normal.[5] (R. at 354, 356, 361, 363, 365, 368.)

On January 11, 2013, Counts was admitted to Norton Community Hospital for complaints of weakness and dehydration, likely secondary to DKA, and fast heart rate, likely secondary to dehydration (R. at 431-32.) He stated these problems began after he ran out of insulin the previous day. (R. at 435.) Chest x-rays showed minimal patchy infiltrates in the left midlung zone. (R. at 434.) He was discharged the following day with a diagnosis of resolved DKA, insulin dependent diabetes mellitus and hypotension. (R. at 428.)

On July 9, 2015, Counts was admitted to Norton Community Hospital for hyperglycemia consisting of DKA with ketones. (R. at 419-21.) Counts reported he

---

[5] In January 2017, Counts's foot examination showed decreased sensitization, but all pedal pulses were normal. (R. at 361.)

had not followed up with his primary care physician for two to three years. (R. at 419.) He stated he could not afford his insulin pump supplies, and he obtained insulin at The Health Wagon occasionally, as well as buying it off the streets. (R. at 419.) Chest x-rays were normal. (R. at 423.) Counts was discharged on July 13, 2015, with a diagnosis of uncontrolled diabetes mellitus type 1; hypothyroidism; acute kidney injury; and hyponatremia.[6] (R. at 416.)

On August 7, 2015, after obtaining insurance, Counts began treating with Dr. Matthew Beasey, M.D., an endocrinologist, for diabetes mellitus and hypothyroidism. (R. at 476.) Counts stated he was losing weight and had increased urination, but no long-term diabetes complications. (R. at 476.) He stated he discontinued medication for his hypothyroidism, but reported he was asymptomatic. (R. at 477.) Upon examination, Counts was thin and malnourished; his pupils were equal in size, round, reactive to light with normal accommodation and intact visual fields; his thyroid was not enlarged and had no mass or tenderness; he had clear bilateral breath sounds with no rales, rhonchi or wheezing; he had a normal gait; his speech was normal; he was fully oriented; and his foot examination showed no active ulcer or deformities. (R. at 477-78.) Dr. Beasey diagnosed diabetes type 1, uncontrolled; hypothyroidism; and diabetic neuropathy. (R. at 478.) Dr. Beasey next saw Counts on April 30, 2018. (R. at 329.) Counts's blood sugar reading was 385 and his A1C was 11.7 percent. (R. at 330, 338.) Dr. Beasey's examination findings remained unchanged. (R. at 330-31.)

On September 5, 2017, Counts was seen at The Health Wagon and complained of pain and numbness in his feet. (R. at 354.) His blood sugar reading

---

[6] Hyponatremia is when the sodium level in the blood is below normal. *See* https://www.kidney.org/atoz/content/hyponatremia (last visited July 20, 2022).

was 483. (R. at 354.) Counts's examination findings remained unchanged. (R. at 354.) That same day, Dr Beasey reported Counts's blood sugar reading was 257 and his A1C was 10.3. percent. (R. at 324, 337.) Counts reported he was working at Dairy Queen and stated he had normal energy level and had experienced no dizziness or fainting spells. (R. at 323-24.) Dr. Beasey's examination findings remained unchanged. (R. at 324-25.)

On June 8, 2019, Dr. Wendy Abbott, D.O., a physician with Southern Medical Group, Inc., saw Counts at the request of Disability Determination Services. (R. at 341-44.) Counts alleged disability due to type 1 diabetes mellitus, peripheral neuropathy and decreased vision. (R. at 341.) Counts stated his diabetes was aggravated by stress, increased activity and not eating properly. (R. at 341.) He reported decreased sensation resulting from peripheral neuropathy and decreased vision and no night vision. (R. at 341.) Counts was independent with his activities of daily living. (R. at 341.) Counts was in no acute distress; he ambulated without assistance; he had an antalgic gait; his grip strength was 5/5 with adequate fine motor movements, dexterity and ability to grasp objects, bilaterally; his extremities had no edema, cyanosis or erythema; he was able to sit in no significant distress and walk and stand in the office; he was fully oriented and cooperative; he did not appear to be depressed or anxious; he was able to communicate with no deficits; his recent and remote memory were intact; he had good insight and cognitive function; he had good bilateral motor tone and strength in all muscle groups; his reflexes were normal; he had intact sensation except for decreased sensation to touch of the bilateral lower extremities; he had no muscle asymmetry, atrophy or involuntary movements; his straight leg raising tests were negative; and his vision was 20/30 in both eyes without correction with decreased vision in all four fields, but he was able to count moving fingers. (R. at 342-43.) Dr. Abbott

diagnosed diabetes mellitus, type 1; peripheral neuropathy; and decreased vision. (R. at 343.)

Dr. Abbott opined Counts would "unlikely" be able to walk and/or stand for a full workday; he "may be" able to sit for a partial workday with allotted occasional breaks; he would be limited to lifting and carrying items weighing less than 10 pounds because his condition "may be" exacerbated by lifting or carrying excessive weight; and he should refrain from excessive bending, stooping and crouching. (R. at 343.)

On August 12, 2019, Dr. Brett Compton, O.D., an optometrist, examined Counts at the request of Disability Determination Services. (R. at 345-48.) Counts was cooperative throughout the examination and navigated the office without complication. (R. at 345.) His uncorrected vision was 20/30 in both eyes and corrected vision was 20/20 in both eyes. (R. at 345.) Counts vision field was normal with no defects in both eyes. (R. at 345.) Dr. Compton reported Counts had near normal vision and function in both eye and he had the ability to participate in the normal workforce. (R. at 346.) Dr. Compton diagnosed type 1 diabetes with no signs of retinopathy in either eye.[7] (R. at 345.)

On August 14, 2019, Dr. Gene Godwin, M.D., a state agency physician, completed an assessment, finding Counts had the residual functional capacity to

---

[7] In January and September 2017, Counts presented to the emergency department at Mountain View for complaints of eye pain and irritation. (R. at 384-86, 400-01.) In January 2017, Counts was diagnosed with corneal abrasion of the right eye, and, in September 2017, he was diagnosed with left eye bacterial conjunctivitis. (R. at 386, 401.) In May 2019, Counts was seen at the emergency department for right eye irritation. (R. at 374-76.) He stated he had no other complaints, as his diabetes was under control, and he reported he worked as a painter. (R. at 374.) Counts was diagnosed with corneal abrasion. (R. at 376.)

perform light work, except he could stand, walk and sit six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; frequently balance, kneel and crawl; and occasionally climb, stoop and crouch. (R. at 63-64.) Dr. Godwin opined Counts had no manipulative, visual, communicative or environmental limitations. (R. at 64.) On September 23, 2019, Dr. Wyatt S. Beazley, III, M.D., a state agency physician, completed a medical assessment, which mirrored that of Dr. Godwin from August 14, 2019. (R. at 89-90.)

On July 22, 2020, Counts was admitted to the intensive care unit at Johnston Memorial Hospital for DKA. (R. at 449-75.) Counts stated his insulin pump tubing was broken and he did not have insurance to have it replaced. (R. at 449.) He stated that his blood sugar readings ranged between 120 and 200 when using the insulin pump. (R. at 449.) His blood sugar reading that day was 418. (R. at 449.) It was noted that Counts had poor routine follow up and did a poor job of self-care with his diabetes. (R. at 460.) Counts was discharged the following day with a diagnosis of DKA and hypothyroidism and was switched to insulin injections, as he could not afford insulin pump supplies. (R. at 449, 467.) Counts was advised to return to normal activities and to follow a diabetic diet. (R. at 451.)

On August 11, 2020, Dr. Beasey saw Counts for follow up regarding his diabetes and related conditions noting that he last saw Counts in September 2018. (R. at 480.) Counts's blood sugar reading was 281 and his A1C was 13.4 percent. (R. at 480, 483.) Counts reported shortness of breath during exertion, but no cough and no wheezing; muscle aches and pains and calf pain with walking; foot callus, but no blisters or skin sores; increase in thirst and urination; and depression. (R. at 481.) Upon examination, Brooks was fully oriented; he had a normal affect; his pupils were equal in size, round, reactive to light with normal accommodation; his

thyroid was not enlarged and there were no palpable thyroid nodules; he had clear bilateral breath sounds with no rales, rhonchi or wheezing; he had a normal gait and balance; his sensation was intact; and pulses in both feet were present with absent vibratory perception through the mid shin. (R. at 482.) Dr. Beasey checked lines on a form stating that Counts's impairment met or equaled the listed impairment for diabetes mellitus found at 9.00B5,[8] and he met or equaled this listing at age five and continued to do so. (R. at 448.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant

---

[8] It is noted that § 9.00 is the medical listing for endocrine disorders found at Part 404, Subpart P, Appendix 1, § 9.00. Listing 9.00 for endocrine disorders states that these disorders are evaluated under the listings for other body systems. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.00(B) (2021). While Dr. Beasey opined that Counts's impairment met or equaled the listed impairment for diabetes mellitus found at § 9.00B5, the court notes that § 9.00B5 merely defines diabetes mellitus and other pancreatic gland disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.00B5 (2021); *see also* 20 C.F.R. §§ 404.1525(d), 416.925(d) (2021) (impairment cannot meet the criteria of a listing based only on a diagnosis). Listing 9.00 states that diabetic neuropathy was to be evaluated under Listing 11.00 for neurological disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.00(B)(5)(b). Listing 11.14 addresses peripheral neuropathy. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14 (2021). This listing requires, in part, disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position or in the ability to balance while standing or walking; or a marked limitation in physical functioning in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14. The ALJ considered Counts's diabetes and its effects and found that Counts's impairments did not meet or equal § 11.14. (R. at 16.)

work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Counts argues the ALJ erred by improperly determining his residual functional capacity by rejecting the opinions of Drs. Blackwell, Abbott and Beasey and by giving controlling weight to the opinions of the state agency physicians. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief") at 4-5.) Counts contends the state agency physicians' assessments were "stale [and] outdated." (Plaintiff's Brief at 5.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding

the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2021) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[9]

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2021).

---

[9] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2021). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2021).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2021).[10] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he considered each of them. Instead, when articulating his finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (2021).

---

[10] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must consider the most persuasive factors, including the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2021). The ALJ found Counts had the residual functional capacity to perform light work, except he was limited to no more than occasional climbing, stooping, kneeling, crouching and crawling and no more than occasional exposure to hazards, such as hazardous machinery or unprotected heights. (R. at 16.)

In making his residual functional capacity finding, the ALJ stated he found the opinions of the state agency physicians "persuasive," because they were supported by and consistent with the longitudinal record, including objective imaging and clinical examination findings. (R. at 18.) The state agency physicians found Counts had the residual functional capacity to perform light work, except he could stand, walk and sit six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; frequently balance, kneel and crawl; and occasionally climb, stoop and crouch. (R. at 63-64, 89-90.) The ALJ acknowledged that Counts had objectively documented type 1 diabetes, peripheral neuropathy and hypothyroidism, and his examinations reflected some motor, sensory and gait limitations, which supported limiting him to light work. (R. at 18.)

The ALJ stated he found the opinions of Drs. Blackwell, Abbott and Beasey "not persuasive." (R. at 18.) In 2012, Dr. Blackwell opined Counts had the ability to lift 45 pounds occasionally and 25 pounds frequently; sit for four-to-six hours and stand for two-to-four hours, assuming normal positional changes, in an eight-hour workday; he could perform bilateral over-head reaching and bilateral pedal operation one-third of the day; he could squat one-third of the day and kneel two-thirds of the day; and he should avoid crouching, crawling, and unprotected heights, as well as repetitive and continuous stair-climbing. (R. at 321.) The ALJ found this opinion not persuasive because it was rendered more than six years prior to the relevant time period and did not reflect Counts's current level of functioning. (R at 18.) As noted above, the ALJ limited Counts to light work and Dr. Blackwell's assessment limited him to a greater level of work-related abilities.

The ALJ stated he found Dr. Abbott's June 2019 opinion "not persuasive" because it was not supported by or consistent with the longitudinal record, including the objective imaging and longitudinal clinical examination findings. (R. at 18.) Dr. Abbott opined Counts would "unlikely" be able to walk and/or stand for a full workday; he "may be" able to sit for a partial workday with allotted occasional breaks; he would be limited to lifting and carrying items weighing less than 10 pounds because his condition "may be" exacerbated by lifting or carrying excessive weight; and he should refrain from excessive bending, stooping and crouching. (R. at 343.)

As noted by the ALJ, Dr. Abbott's examination findings revealed Counts ambulated without assistance; he had an antalgic gait; his grip strength was 5/5 with adequate fine motor movements, dexterity and ability to grasp objects, bilaterally; his extremities had no edema, cyanosis or erythema; he was able to sit

in no significant distress and walk and stand in the office; he had good bilateral motor tone and strength in all muscle groups; his reflexes were normal; he had intact sensation except for decreased sensation to touch of the bilateral lower extremities; he had no muscle asymmetry, atrophy or involuntary movements; and his straight leg raising tests were negative. (R. at 17, 342-43.)

The ALJ stated he found Dr. Beasey's August 2020 opinion that Counts's impairment met or equaled the listed impairment for diabetes mellitus found at 9.00B5 "not persuasive" because statements from medical sources noting disability and similar statements such as meeting or equaling a listing are not persuasive, as they are conclusory in nature. (R. at 18, 448.) The ultimate decision of whether or not a claimant meets or equals a listing is reserved to the Commissioner. (R. at 18.) *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2021) (whether a claimant's impairment meets or equals a listed impairment is an issue reserved exclusively to the Commissioner). The ALJ is solely responsible for determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) (2021); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2021) (a claimant's residual functional capacity is an issue reserved exclusively to the Commissioner). As noted above, the ALJ considered Counts's diabetes and its effects and found that his impairments did not meet or equal a listed impairment. (R. at 16.)

The record shows Counts had a normal gait; his motor strength was normal in both the upper and lower extremities; he had intact sensation; and his foot examinations were normal. In August 2019, Counts's best corrected vision was 20/20 in both eyes, his visual field was normal in both eyes, and he had no signs of retinopathy.

As noted by the ALJ, Counts treated with conservative modalities, including an insulin pump and medication and showed good results when he was medication compliant. (R. at 17, 19.) If prescribed treatment can restore an individual's ability to do work-related functions, the individual must comply with it. *See* 20 C.F.R. §§ 404.1530(a), 416.930(a) (2021). In May 2019, Counts reported his diabetes was under control. (R. at 374.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

Counts was essentially independent and able to perform a wide array of activities despite his impairments, including taking care of his personal needs; performing light housework; shopping in stores; working on cars; cooking/culinary work; taking care of his pets; playing games with an online community; and spending time with family. (R. at 256-57, 259, 341.)

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2. Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Counts was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Counts's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioners decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   July 20, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE